CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

December 31, 2025
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No.: 1:25-cr-00025 |
| | ) | |
| v. | ) | |
| | ) | |
| GERALD MCCOY, | ) | By: Hon. Robert S. Ballou |
| | ) | United States District Judge |
| Defendant. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No.: 1:25-cr-00049 |
| | ) | |
| v. | ) | |
| | ) | |
| TERRY ALEXANDER HEADEN, | ) | By: Hon. Robert S. Ballou |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER[1]**

A lawyer owes a duty of loyalty to a client neither to reveal confidential information nor to act adverse to a client's interests. In a drug distribution conspiracy, the lawyer who attempts to represent closely related co-conspirators has a conflict because of the duty not to reveal confidential information about one client or give advice adverse to another client. Each co-conspirator likely has confidential information about other co-conspirators, which a lawyer cannot advise a client to reveal if that information is adverse to another client. Because of these conflicting duties, lawyers do not undertake the representation of co-conspirators.

---

[1] The court ruled from the bench at a status conference in these cases on December 18, 2025 to disqualify Matthew Felty as counsel for Gerald McCoy and Terry Headen because of the conflict presented by undertaking the representation of two closely related co-conspirators in a drug distribution conspiracy. This Memorandum Opinion and Order memorializes the reasons for that decision.

In May 2025, Matthew Felty was appointed to represent Gerald McCoy in a methamphetamine distribution conspiracy which included McCoy (and others) traveling into West Virginia to purchase illegal drugs from Terry Headen (and others) and return to the Western District of Virginia for distribution. Headen was charged by criminal complaint and later indicted for conspiracy to distribute methamphetamine. The complaint alleges in great detail the close relationship between Headen and McCoy in the purchase and distribution of methamphetamine in the Western District. Matthew Felty agreed to undertake the representation of Headen despite his current attorney/client relationship with McCoy. Felty's conflict of interest of representing co-conspirators limits his ability to fully advise his clients of their rights and options in the defense of these charges or during sentencing. Having the same lawyer represent co-conspirators of the same drug distribution conspiracy creates the appearance of impropriety and undermines the integrity of the proceedings and this Court's obligation to assure both defendant clients of their Sixth Amendment right to conflict-free counsel. Thus, the Court **ORDERS** that Matthew Felty be disqualified from representation of both defendants Gerald McCoy (Case No. 1:25cr25) and Terry Headen (Case No. 1:25cr49).

I.   Background

These cases center around a drug distribution and firearms trafficking conspiracy that involved both Gerald McCoy and Terry Headen, who are each represented by Matthew Felty. *Headen*, Dkt. 3-1 at 2. In April 2025, six members of the conspiracy were arrested on a criminal complaint, including Gerald McCoy. Complaint, *United States v. McCoy*, 1:25-cr-00025 (W.D. Va. Apr. 21, 2025), Dkt. 3-1. The criminal complaint detailed the extensive relationship between McCoy and Headen including multiple trips McCoy made to West Virginia to purchase methamphetamine from Headen. *Id*; *see also*, Complaint, *United States v. Headen*, 1:25-cr-00049

2

(W.D. Va. Sept. 23, 2025), Dkt. 3-1. The court appointed Felty as McCoy's CJA counsel and in July 2025, McCoy pled guilty to a one count information, which charged him with knowingly and intentionally conspiring to possess with the intent to distribute and distributing 500 grams or more of a methamphetamine mixture, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 846. *McCoy*, Dkt. 15, 35. McCoy faces a potential term of life in federal prison with a mandatory minimum term of 10 years imprisonment. Felty explained to McCoy before he pled guilty that the court may have the authority to impose a sentence below the mandatory minimum sentence or below the applicable guideline range if he provides substantial assistance in the investigation or prosecution of another. *See* 18 U.S.C. § 3553(e); U.S.S.G. § 5K1.1; *McCoy*, Dkt. 48 at 3. Felty did not represent Headen when he advised McCoy of his sentencing options, including the right to seek a substantial assistance motion from the government. McCoy told Felty repeatedly that he absolutely refused to cooperate with the government and requested that Felty stop raising the issue with him. *McCoy*, Dkt. 48 at 3.

Through further investigation of the methamphetamine distribution conspiracy, the government identified three additional coconspirators, including Terry Headen. In September 2025, the government charged Headen in a criminal complaint with conspiracy to possess with the intent to distribute and distribution of methamphetamine. *Headen*, Dkt. 3-1. The court appointed Jaxon Wilkens as Headen's CJA counsel. *Headen*, Dkt. 7. Wilkens appeared on Headen's behalf at his initial appearance and detention hearings. *Headen*, Dkt. 8, 20. In October 2025, Wilkens moved to substitute counsel because Headen retained Felty to represent him in this conspiracy. *Headen*, Dkt. 28. Also in October, the grand jury returned a three-count indictment against Headen and two co-defendants.[2] *Headen*, Dkt. 29. Count 1 charged Headen of

---

[2] Headen is charged only in Counts 1 and 2.

3

conspiring with, *inter alia*, his co-defendants and McCoy to possess with intent to distribute and distribution of 500 grams or more of methamphetamine. *Id*. Count 2 charged Headen with conspiracy to possess with intent to distribute and distribution of fentanyl. Like McCoy, Headen faces a mandatory minimum sentence of ten years and up to life in federal prison if convicted under Count 1 of the indictment. Felty confirmed that he advised Headen of his sentencing options, including seeking a substantial assistance motion from the government, but Headen has also steadfastly refused to cooperate with the government. *Headen*, Dkt. 73 at 4.

The criminal complaint and accompanying affidavit filed in Headen's case also shows the close relationship between Headen and McCoy as part of the drug distribution conspiracy. Specifically, the government alleges that Headen's Facebook message history shows that between January and March 2024, McCoy traveled from the Western District of Virginia to another coconspirator's home in in Welch, West Virginia multiple times to purchase methamphetamine and fentanyl from Headen. *Headen*, Dkt. 3-1 at 4. Headen and McCoy communicated about these trips and drug pricing through the Facebook messaging application. Another member of the conspiracy has told the Government that she traveled with McCoy to purchase drugs from Headen. *Id*. at 9. The government alleges that McCoy paid Headen approximately $13,185 through Cash App between February and June 2024 for the purchase of methamphetamine. *Id*. at 7.

The government alleges in the criminal complaint that McCoy was arrested on state drug distribution charges in March 2024. *Id*. at 6. Shortly afterwards Headen reached out to McCoy's girlfriend through Facebook offering to pay McCoy's bond. *Id*. Eventually, McCoy was released from state custody and continued to travel to West Virginia to purchase methamphetamine and fentanyl from Headen. *Id*.

4

McCoy admitted during his guilty plea that he "traveled on multiple occasions from the Western District of Virginia to Welch, West Virginia, to purchase methamphetamine.". *McCoy*, Dkt. 27 at 2. Circumstantial evidence based on the allegations in the criminal complaint (*Headen*, Dkt. 3-1) and McCoy's admissions show that he traveled to West Virginia to purchase methamphetamine from Headen. The allegations in the criminal complaints filed in McCoy's and Headen's cases show the close relationship between them in furtherance of the conspiracy to distribute large amounts of methamphetamine. These allegations also demonstrate the interrelatedness of the government's evidence against both defendants.

The government initially advised Felty that he had a potential conflict representing both McCoy and Headen. *McCoy*, Dkt. 49 at 2; *Headen*, Dkt. 74 at 2. That issue then came before Judge Sargent during a hearing on the motion to substitute Felty as Headen's attorney. Headen, Dkt. 38. Felty acknowledged the potential conflict representing both defendants, but he maintained that he had disclosed the conflict to them, that both understood the conflict, that they did not want to cooperate in any manner with the government (or be adverse to one another), and that they wanted Felty to represent them. *McCoy*, Dkt. 48 at 5; *Headen*, Dkt. 73 at 5. Additionally, Felty sought guidance from the Virginia State Bar which advised him that the conflict appeared to be more theoretical than actual, since it does not appear that the clients will cooperate against one another. *McCoy*, Dkt. 40-1; *Headen* Dkt. 46-1. The Virginia State Bar directed Felty to disclose the representation to both clients and to inform them that if the situation changes, he may be conflicted out of both representations. *Id*.

On November 10, Headen and McCoy along with Felty appeared before Judge Sargent, but they did not have separate counsel to advise them regarding the conflict of having Felty represent both co-conspirators. *Headen*, Dkt. 45. Judge Sargent conducted a fulsome colloquy as

5

to the conflicts that might arise due to Felty's representation of both defendants. Judge Sargent found that Headen and McCoy were competent to waive their right to separate representation. *Headen*, Dkt. 47; *McCoy*, Dkt. 41. Judge Sargent granted Headen's motion to substitute attorney. *Headen*, Dkt. 48. Headen subsequently filed a waiver of the right to separate representation. *Headen*, Dkt. 49. McCoy also filed a waiver. *McCoy*, Dkt. 42.

I revisited the conflict issue with counsel during a Rule 16 conference to set the case for trial. I asked the government and Felty to provide further briefing on whether Felty has an actual conflict representing both defendants or whether the court should disqualify Felty in both cases to protect the integrity of proceedings. *McCoy*, Dkt. 45; *Headen*, Dkt. 57. I also appointed separate conflict counsel to McCoy and Headen. At the hearing on this issue, I heard testimony from McCoy and Headen that they both wished to have Felty remain as their counsel, that they understood the potential that an actual conflict would arise if one defendant offered testimony against the other, and that they did not want to offer any assistance to the government. Following argument from counsel, I concluded that protecting the Sixth Amendment right to conflict free counsel was of paramount importance and that Felty could not advise each defendant in this action without giving advice adverse to one or both clients. Consequently, I held that Matthew Felty must be disqualified from representation of Defendants Terry Headen and Gerald McCoy and directed that conflict counsel step in to undertake the defense of their respective clients.

## II. Discussion

To deal with conflicts of interest, courts engage in three steps. First, the district court must determine if there is an actual or potential conflict of interest. *See Hoffman v. Leeke*, 903 F.2d 280, 285 (4th Cir. 1990) (holding that the Sixth Amendment guarantees the right to conflict free counsel). Although state bar professional rules inform conflict determinations from an

6

ethical perspective, the Sixth Amendment provides the standard for assessing whether a conflict exists which affects a criminal defendant's right to effective counsel. Second, if there is a conflict, the court must determine if the defendant knowingly, intelligently, and voluntarily waived the right to conflict-free representation. *United States v. Brown*, 202 F.3d 691, 697 (4th Cir. 2000). Third, if the conflict is waivable, the court must determine whether, despite the defendant's waiver and qualified right to representation by counsel of choice, the court's independent interest in the integrity of proceedings counsels in favor of disqualification. *Wheat v. United States*, 486 U.S. 153, 162 (1988)

      Here, Felty has chosen to undertake the representation of two closely related coconspirators charged in separate criminal complaints. He owes a duty to each client to advise them regarding their legal jeopardy, their liberty interests and those factors which could affect their potential sentences, including providing substantial assistance in the investigation or prosecution of others for their criminal activity and the acceptance of responsibility if pleading guilty. This duty does not end upon a client refusing at some point during the representation to cooperate with the government in its investigation or prosecution of others or a client deciding not to acknowledge relevant conduct. A client who accepts responsibility for his criminal activity must truthfully admit the conduct comprising the offense of conviction and additional relevant conduct for which the client is accountable under U.S.S.G. § 1B1.3. A lawyer representing intimately intertwined co-conspirators has a conflict that prevents the lawyer from providing comprehensive advice to one client where it may be detrimental to another client. The prudent decision, and the only correct decision is for a lawyer to decline representation of closely related co-conspirators. Therefore, disqualification of Felty from representing McCoy and Headen is appropriate.

7

**A.  There is at least a serious potential conflict of interest.**

A defendant has a Sixth Amendment right to representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). This right extends to cases of an actual conflict of interest or a potential conflict interest. *Wheat*, 486 U.S. at 163 (holding that the Sixth Amendment right still applies when "a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"). There is a presumption in favor of the defendant's counsel of choice, but an actual conflict or a serious potential for conflict may overcome that presumption. *Id.* at 164. A conflict of interest "occurs in circumstances where a lawyer's interests are such that it is reasonable to believe that she or he would be tempted to act in a manner inimical to the client's best interests." *United States v. Cortez*, 205 F. Supp. 3d 768, 776 (E.D. Va. 2016) (citing *Reckmeyer v. United States*, 709 F. Supp. 680, 688 (E.D. Va. 1989)). The state rules of professional conduct can be instructive, but the proper standard for determining a lawyer has a potential or actual conflict comes from the Sixth Amendment. Compliance with an ethical rule may not satisfy the Sixth Amendment, just as the breach of an ethical rule may not definitively show a denial of the Sixth Amendment right to counsel. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Nix v. Whiteside*, 475 U.S. 157, 165 (1986).

An actual conflict occurs when an attorney (1) actively represents competing interests and (2) acted on behalf of one of those interests. *United States v. Tatum*, 943 F.2d 370, 375-76 (4th Cir. 1991) (An actual conflict exists when "the attorney is actively engaged in legal representation which requires him to account to two masters . . . when it can be shown that he took action on behalf of one"). "[I]t is well settled that the Sixth Amendment right to counsel is breached where one lawyer is required to represent two defendants despite the defendants' conflicting interests." *Hoffman*, 903 F.2d at 285. Adverse action may be shown by either

8

affirmative action or failure to take actions that are clearly suggested from the circumstances. *Tatum*, 943 F.2d at 376.

A potential conflict of interest exists when an attorney actively represents competing interests, but litigation has not progressed to place the attorney in the position of acting adversely to one client. A potential conflict may exist before it affects counsel's performance but is rather a "theoretical division of loyalties." *United States v. Urutyan*, 564 F.3d 679, 687 n.11 (4th Cir. 2009) (citing *Mickens v. Taylor*, 535 U.S. 162, 171 (2002)); *see Wheat*, 486 U.S. at 160 (finding a potential conflict because the defendant's attorney would be required to cross-examine a former client).

Felty argues that because the defendants in this case have adamantly refused to cooperate with the government, there is no conflict of interest, and disqualification is inappropriate. I disagree. The obligation to advise a client of their legal options does not end when a client decides not to cooperate. Once Felty took Headen as a client, he could no longer advise McCoy to take a position adverse to Headen or even advise it as a possibility. Because both defendants may receive sentencing benefits if they cooperate with the government through providing substantial assistance, seeking the protections of the safety valve provision[3], or accepting responsibility for their criminal conduct, Felty cannot fulfill his duties to each client because of the conflict.

First, if convicted, both defendants may be subject to a mandatory minimum period of incarceration of ten years unless an exception applies and potentially could face up to life. *See* 21 U.S.C. § 841(b)(1)(A). Based on his criminal history, Headen may be eligible for safety valve

---

[3] Counsel agree that it does not appear that McCoy is safety valve eligible because of his criminal record. The government argues that Headen may have a nonfrivolous argument that he is entitled to the benefit of safety valve consideration.

consideration and a sentence either below the mandatory minimum under 18 U.S.C. § 3553(f) or the stated guidelines under U.S.S.G. § 5C1.2. A defendant who is considered an organizer, manager, or supervisor of others in the offense, however, is not safety valve eligible. *See* 18 U.S.C. § 3553(f)(4), U.S.S.G. § 5C1.2(a)(4). By representing both defendants in this conspiracy Felty will have difficulty arguing the relative roles of the defendants, *i.e.* that one client occupied a "mitigating role" compared to the other. Further, a safety valve eligible defendant must "truthfully provide[] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." *See* 18 U.S.C. § 3553(f)(5), U.S.S.G. § 5C1.2(a)(5). If either defendant provided "all information" about the scheme, it would undoubtedly implicate the other defendant. Therefore, Felty cannot advise Headen to take advantage of this provision without running afoul his of obligations to McCoy.

Felty appears to argue that there is no conflict because McCoy's criminal history and evidence of firearm involvement in Headen's case render each disqualified from the safety valve provision. As the government notes, even if Headen is subject to a firearms enhancement under § 2D1.1(b)(1), he may still be eligible for the safety valve provision. Dkt. 74 at 9. In any case, the fact that Headen may be safety valve eligible creates a serious potential conflict of interest.

Second, each defendant may be eligible for a sentence below either the mandatory minimum or the advisory guideline range if he provides substantial assistance. *See* 18 U.S.C. § 3553(e), U.S.S.G. § 5K1.1. A defendant may receive a sentence reduction for substantial assistance if he comes forward with information in the year following sentencing. Fed. R. Crim. P. 35(b). Felty has a continuing duty to advise each defendant of the possibility of providing substantial assistance even after sentencing. *See Cortez*, 205 F. Supp. 3d at 777. Therefore, the

10

conflict will persist for at least the next 13 months. McCoy is scheduled to be sentenced in the next month. Felty has a conflict that prevents him from fully and adequately advising McCoy of his rights after sentencing if doing so would be adverse to Headen's interests.

In both instances, Felty is forced to "pursue conflicting interests" as to each client and therefore cannot provide effective assistance of counsel. *See Strickland*, 466 U.S. at 692. Quite clearly, McCoy and Headen have conflicting interests in the case. Felty relies upon the adamant refusal of both clients to cooperate with the government and the knowing their waivers to suggest that he has only a "potential" not an "actual" conflict, because the clients' interests are currently aligned. This assertion misreads the standard for finding an actual conflict. Adverse action may be shown by either failure to act or affirmative action. *Tatum*, 943 F.2d at 376.

Although the parties have not yet raised facts to show adverse action, failure to advise either defendant fully as to their legal options in a case may constitute adverse action in this case. The Eastern District of Virginia has held that an actual conflict of interest exists when "it is reasonable to believe that she or he would be tempted to act in a manner inimical to the client's best interests." *Cortez,* 205 F. Supp. 3d at 777.[4] The fact that both clients refuse to cooperate does not change Felty's continuing duty to advise them of their legal options (including the ability to seek a sentence below the mandatory minimum or the advisory guideline range) at all times during his representation. Merely advising each client to make a statement that would implicate another client creates a conflict of interest. *See Hoffman*, 902 F.2d at 286 (holding that an actual conflict of interest existed when counsel advised one client to give testimony which

---

[4] Despite finding that there was an actual or potential conflict of interest, the court accepted waiver of the conflict in a subsequent order. Order, *United States v. Cortez*, No. 1:16-CR-128 (E.D. Va. September 29, 2016), Dkt. 93. The defendants in that case did not communicate with each other directly.

11

implicated the other and rejecting counsel's argument that there was no conflict of interest because counsel believed each defendant would testify to substantially the same facts).

Applying the Sixth Amendment standard to find an actual conflict, the Fourth Circuit typically requires both representation of inimical interests and adverse action against one client. *Tatum*, 943 F.2d at 375–76. Some courts in the Fourth Circuit have suggested that representation of adverse interests is sufficient to find an actual conflict. *Cortez*, 205 F. Supp. 3d at 776; *Reckmeyer*, 709 F. Supp. at 688. Under the Fourth Circuit standard, it is difficult to pinpoint an actual conflict without the benefit of hindsight. *See Wheat*, 486 U.S. at 162. To advise each client to give a statement implicating the other when the clients refuse to do so is likely an actual conflict of interest. Failure to advise a client of the opportunity to cooperate may create an actual conflict of interest because it would be "inimical" to each client's interest. *See Tatum*, 943 F.2d at 376 (holding that failure to act may constitute adverse action that creates a conflict of interest). By advising McCoy to cooperate, Felty has acted in a manner adverse to Headen's interests, and *vice versa*. In this case, the alleged criminal activity of McCoy and Headen is intimately intertwined making it abundantly clear that Felty has a conflict representing both defendants. *See Cortez*, 205 F. Supp. 3d at 776–77 (holding that there was at least a serious potential conflict of interest when the two defendants separately prosecuted for child pornography distribution engaged in similar conduct and were a chatroom at the same time); *Wheat* 486 U.S. at 164 (holding that there was a serious potential conflict of interest when counsel represented two members of a drug conspiracy and faced potentially cross examining a former client pursuant to representation of another client).

Because there is currently no evidence that Felty's representation of both McCoy and Headen is adverse to the other since both refuse to cooperate, there is an argument that this is

12

merely a potential conflict of interest which might allow Felty to undertake the representation of both. *Id*. I conclude, however, that because Headen and McCoy have antagonistic interests limiting Felty's ability to advise both fully without violating his duties to the other, an actual conflict exists requiring disqualification from representing both McCoy and Headen.

**B. The Court has an independent obligation to ensure the integrity of proceedings and avoid the appearance of impropriety.**

Even if I consider Felty's conflict as merely a potential conflict waivable by the defendants, the district court retains broad discretion to accept or decline waivers. This discretion reflects that "[c]ourts have their own 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Stanko v. Stirling*, 109 F.4th 681, 692 (4th Cir. 2024) (citing *United States v. Caldwell*, 7 F.4th 191, 203 (4th Cir. 2021)); *see also United States v. Basham*, 561 F.3d 302, 323 (4th Cir. 2009) (holding that a potential or actual conflict of interest may overcome the defendant's Sixth Amendment right to counsel of their choice). The district court must determine "whether the proceedings are likely to have the requisite integrity if a particular lawyer is allowed to represent a party." *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996) (citing *Wheat*, 486 U.S. at 161–64)). "Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court, but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court." *Wheat*, 486 U.S. at 162 (citing *United States v. Dolan*, 570 F.2d 1177, 1184 (3rd Cir. 1978)). This measure of discretion protects district courts from reversal on right-to-counsel grounds or ineffective-assistance grounds. *Williams*, 81 F.3d at 1324.

Disqualification may be appropriate whether there is a potential or actual conflict of interest. *Wheat*, 486 U.S. at 163 (holding that courts have "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses"). The court's interest in avoiding the appearance of impropriety and protecting the integrity of judicial proceedings may outweigh the defendant's Sixth Amendment right to counsel of their choice. *Basham*, 561 F.3d at 323 (citing *Wheat*, 486 U.S. at 164). The district court must "foresee problems over representation that might arise at trial and head them off beforehand." *Id*. (quoting *United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997)). Deference to the district court is particularly important when the court anticipates potential conflicts. *Id*. at 324. And even where defense counsel may avoid an actual conflict of interest, the fact that representation gives the appearance of impropriety provides adequate grounds for disqualification. *United States v. Scott*, 980 F. Supp. 165, 169 n.5 (E.D. Va. 1997).

In this case, disqualification is appropriate. First, the defendant's Sixth Amendment right to counsel of their choice is not absolute. *Hoffman*, 903 F.2d at 288. District courts have broad latitude to reject waivers to forestall ineffective assistance claims, and to effectuate the core of a defendant's Sixth Amendment right "to guarantee an effective advocate for each criminal defendant." *Wheat*, 486 U.S. at 159. Here, the potential conflict of interest raises serious doubt as to whether Felty can serve as an effective advocate to the defendants. Second, the court has an independent interest in protecting the integrity of the judiciary and avoiding the appearance of impropriety. *Id*. at 164. The government has charged McCoy and Headen as co-conspirators deeply involved with one another in the distribution of methamphetamine in the Western District.

14

These allegations suggest that each defendant has substantial knowledge about the other's involvement in the conspiracy. I find that disqualification of Felty as counsel for both defendants is appropriate to assure that each has an attorney unburdened by the conflict of representing co-conspirators in order to effectuate their right to have the assistance of counsel as guaranteed by the Sixth Amendment, to protect the integrity of the judiciary, and to avoid the appearance of impropriety.

### III. Conclusion

The Court finds that representation by current counsel presents actual and potential conflicts of interest and may impact the integrity of the Court and create the appearance of impropriety. This Court **ORDERS** that attorney Matthew Felty may not represent Gerald McCoy or Terry Headen in any matter related to this prosecution. The Court further **ORDERS** that the conflict counsel appointed to represent McCoy and Headen shall assume the defense of the case on behalf of their clients in place of Matthew Felty.

It is **SO ORDERED**.

Entered: December 31, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge